UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, CANTON

---------------------------------------------------------x
In re:                                            :   Case No. 11-62592
                                                  :
CHAPMAN INDUSTRIAL                                :   Chapter 11
CONSTRUCTION INC.                                 :
                                                  :   Judge Russ Kendig
                                                  :
      Debtor and                              :
      Debtor-in-Possession.                    :
                                                  :
(Employer Tax I.D. No. 20-2450656)                :
---------------------------------------------------------x

**MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL
<u>PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE</u>**

The above-captioned debtor and debtor in possession (the "Debtor"), hereby moves the Court, pursuant to sections 363 and 364 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of interim and final orders authorizing the Debtor to use Cash Collateral (as such term is defined in section §363(a) of the Bankruptcy Code.

In support of this Motion, the Debtor respectfully represents as follows:

## I. Background

1. On August 9, 2011 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property and is operating and managing its business, as debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue of the Debtor's chapter 11 case and this Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and Local Bankruptcy Rules.

3. The Debtor was founded in 2004 by Michael L. Chapman. Mr. Chapman has over 35 years experience in the construction industry. The majority of the Debtor's customers are in the manufacturing industry and production schedules are imperative. The Debtor has met its customers' needs by repairing and maintaining their processing equipment not only on an emergency basis but also in their plant expansions and everyday maintenance programs.

4. The Debtor's sales grew from $2,400,000 annually in 2004 to over $11,000,000 annually in 2007. Because of the Debtor's rapid growth and customer demand, construction of a 7,500 sq. ft. warehouse and a 7,200 sq. ft. office building located at 5617 Crown Rd, Dover, OH was completed in May 2008. In 2008 the Debtor had annual sales of $12,500,000. Also in 2008, the Debtor was forced to file a lawsuit against Republic Steel for non-payment of contractual work completed. The lawsuit was settled in June of 2010 but that event put a strain on the Debtor's cash flow. The Debtor's cash flow problems were exacerbated by the downturn of the economy in 2009. In 2009, sales dropped over 60% annually and the Debtor's customers extended payment terms out to 90 to 120 days.

72619

5. In 2010, the Debtor started a $4,000,000 project at A.K. Steel, Butler, PA as a sub-contractor for J.C. Williamson (who has had previous projects with the Debtor). The Debtor performed over $456,473 of extra work on the A.K. Steel, Butler, PA project that was above and beyond the contract. The Debtor was assured by J.C. Williamson that it would be paid for this work at the end of the project. All work was completed in March, 2011. Mr. Chapman met with J.C. Williamson regarding the extras on 3 separate occasions and was led to believe that all amounts owed would be paid. As of the petition date, the Debtor has not been paid the retainage of $259, 871 or the last billings on the contract which total $134,687. These three items total $851,031.

6. Due to the unpaid amounts owed on the A.K. Steel, Butler, PA project, the Debtor has been sued by its suppliers and was unable to pay all of its labor costs which has resulted in lawsuits being filed by labor unions. Further, Huntington National Bank, the Debtor's secured lender has taken steps to collect the secured debts owed by the Debtor.

7. Since the start of 2011 the Debtor has downsized and closed its piping division, laid off office staff, and reduced its annual overhead by over $500,000. The Debtor is a viable company and has purchase orders from significant customers such as: PPG, Timken, Cargill Salt, PTC Alliance, United Rolls, Dover Chemical. The Debtor commenced the instant chapter 11 case to address the losses related to the A.K. Steel, Butler PA project, reduced annual sales, and the litigation related to the A.K. Steel, Butler PA project, and as the only way to preserve its remaining business.

## II. The Debtor's Need for Use of Cash Collateral

8. The Debtor financed its operations with financings from Huntington Bank ("HNB") as follows:

72619

a. Revolving Loan under Note No. 00026 in the original amount of $200,000, dated May 11, 2006, ("Note 1") as Note 1 may have been amended from time to time. Note 1 is secured by the Debtor's accounts receivable, inventory, cash, equipment, their proceeds, and other property as described in the security agreement attached hereto, and with a current balance of approximately $750,000.

b. Term Loan under Note No. 00059 in the original amount of $225,000 dated February 17, 2009 ("Note 2"), as Note 2 may have been amended from time to time. Note 2 is secured by the Debtor's real estate located at 1611 Allen Ave., S.E., Canton, Ohio 44707, the Debtor's accounts receivable, inventory, cash, equipment, their proceeds, and other property as described in the security agreement attached hereto, and with a current balance of approximately $209,389.

c. Term Loan under Note No. 00067 in the original amount of $720,000 dated November 30, 2010 ("Note 3"), as Note 3 may have been amended from time to time. Note 3 is secured by the Debtor's accounts receivable, inventory, cash, equipment, their proceeds, and other property as described in the security agreement attached hereto with a current balance of approximately $192,191.

Pertinent documents evidencing Notes 1 through 3 are attached hereto as Exhibit A.

9. The Debtor also guaranteed Small Business Administration ("SBA") loans of their principals Michael Chapman and Cynthia Chapman (collectively, the "Chapmans"), as follows:

a. SBA loan no. 28645760-01 dated August 26, 2008, in the principal amount of $489,575 with HNB as the third party lender, secured by the real estate and fixtures used as Debtor's place of business owned by the Chapmans. This SBA loan is not secured by any of the Debtor's property.

72619

-4-

11-62592-rk    Doc 14    FILED 08/09/11    ENTERED 08/09/11 12:17:20    Page 4 of 8

    b.  SBA loan no. 28645760-01 in the original amount of $405,000 with Growth Capital Corporation as the certified development company, secured by the real estate and fixtures used as Debtor's place of business owned by the Chapmans. This SBA loan is also not secured by any of the Debtor's property.

 10. The Debtor requires the use of HNB's cash collateral to continue its business operations and to pay its regular daily expenses including utilities, and other costs of doing business, and administrative costs of the chapter 11 case.

 11. The Debtor requires cash collateral to pay necessary business expenses, and to continue its operations.

 12. The ability of the Debtor to continue in business and remain a viable entity and to have any prospect to propose a plan of reorganization under chapter 11 of the Bankruptcy Code depends upon obtaining such authority to immediately use cash collateral.

 13. Absent the requested relief, the Debtor will be unable to pay its operating expenses, and to otherwise operate its business and preserve its assets. Immediate and irreparable harm to the Debtor's businesses and value of its estate will occur absent the relief requested herein.

 14. Pursuant to section 363(c)(2) of the Bankruptcy Code, if the Lender's interest in cash collateral is valid, the Debtor may use cash collateral only with the consent of the Lender or with the Court's approval. By this Motion, the Debtor requests that the Court authorize the Debtor to use cash collateral, in the ordinary course of its business, including, but not limited to, meeting its working capital needs as shown on Exhibit B attached hereto.

 15. Lender's interest in cash collateral is adequately protected. Such adequate protection will be provided to the Lender through the preservation of the Debtor's value as a going concern

and a replacement lien on the Debtor's post-petition WIP, inventory, accounts receivable, and cash.

16. Approval of the attached Interim Order is in the best interest of the Debtor's estates, and the Debtor believes that other creditors will not be prejudiced by the entry of the Interim Order.

17. The Debtor requests that it be immediately authorized, pursuant to section 363(c) of the Bankruptcy Code, to use cash collateral according to the terms of the Interim Order.

### III. The Necessity for Both Interim and Final Relief

18. Absent use of cash collateral, the Debtor will not have sufficient funds to meet its working capital needs. Consequently, the Debtor requires immediate use of cash collateral to finance its business operations and meet ongoing cash and credit needs during the pendency of its chapter 11 case. During the period between the interim hearing on this Motion and the final hearing, the Debtor requires immediate authority to use cash collateral sufficient to meet its financing needs. Any denial of the use of cash contemplated by the Motion would prevent the Debtor from operating as a viable going concern thereby substantially (and perhaps irreparably) impairing their ability to effectuate a successful reorganization. Thus, the relief requested in this Motion is essential to the Debtor's short-term survival and the Debtor's ultimate ability to reorganize successfully.

### IV. Request for Interim Relief

19. Use of cash collateral represents the Debtor's sole source of operating funds and working capital. Without the ability to use cash collateral the Debtor would be forced to cease operations. The Debtor seeks, therefore, after a preliminary hearing, immediate use of cash collateral to avoid immediate and irreparable harm to the Debtor and its estate.

72619

-6-

11-62592-rk    Doc 14    FILED 08/09/11    ENTERED 08/09/11 12:17:20    Page 6 of 8

## V. Notice

20. No creditors' committee has been appointed in this chapter 11 case. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the United States Trustee; (b) the Debtor's 20 largest unsecured creditors as identified in its chapter 11 petition; (c) the Debtor's prepetition secured lender(s) and servicer(s); and (d) the District Director of Internal Revenue; (e) any party with an interest in the collateral. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

21. The Debtor further requests that the Court deem service of this Motion, pursuant to Bankruptcy Rule 4001(b)(1) and 4001(c)(1) and service of the Interim Order, good and sufficient notice of the final hearing.

## VI. No Prior Request

22. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order in the form attached hereto as Exhibit C after a preliminary hearing: (a) authorizing the Debtor's immediate use of cash collateral in an amount sufficient to avoid immediate and irreparable harm to the Debtor and its estate; (b) after a final hearing, enter a final order authorizing the Debtor's use of

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

11-62592-rk    Doc 14    FILED 08/09/11    ENTERED 08/09/11 12:17:20    Page 7 of 8

cash collateral in the ordinary course of the Debtor's business; and (d) granting any other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
Courtyard Centre, Suite 307
116 Cleveland Ave., N.W.
Canton, Ohio 44702
Telephone: 330-588-9700
Facsimile: 330-588-9713
Email: ajdlaw@sbcglobal.net

PROPOSED COUNSEL FOR THE
DEBTOR AND DEBTOR IN
POSSESSION
